# United States Court of Appeals
## For the First Circuit

No. 03-1982

UNITED STATES OF AMERICA,

Appellee,

v.

CESAR MORENO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, Chief U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Howard, Circuit Judges.

Van L. Hayhow for appellant.
Donald C. Lockhart, Assistant United States Attorney with whom
Craig N. Moore, Acting United States Attorney and Andrew J. Reich,
Assistant United States Attorney were on brief, for appellee.

April 29, 2004

**HOWARD**, **Circuit Judge**.    In this appeal, we decide whether the district court permissibly applied an upward departure in sentencing Cesar Moreno for bail jumping to avoid prosecution on several civil rights charges.  We vacate the sentence and remand for resentencing.

## I.

On October 6, 1998, Moreno and three others were indicted by a federal grand jury on eight civil rights offenses.[1]  See 18 U.S.C. §§ 241, 242.  The next day Moreno was arraigned, at which time the district court released him on bond and advised him of his obligation to appear at all subsequent court proceedings.  The court also limited Moreno's travel to Massachusetts and Rhode Island and ordered him to surrender his Colombian passport.  Moreno falsely told the court that he had lost his passport. Approximately three months later, he flew to Colombia.

While Moreno remained in Colombia, the government proceeded with the prosecution of Moreno's co-defendants.  In May 1999, the other defendants were acquitted of all charges. Approximately four years after his disappearance, Moreno was arrested in New York on the still-pending civil rights indictment. As part of a plea agreement, Moreno pleaded guilty to a one-count information of knowingly and willfully failing to appear for a

---

[1] The underlying indictment derived from Moreno's role as an informant for the Rhode Island Attorney General's drug strike force.

court proceeding, see 18 U.S.C. § 3146(a)(1) (the "bail jumping statute"), and the government moved to dismiss the underlying civil rights indictment.

Applying U.S.S.G. § 2J1.6, Moreno's probation officer submitted a presentence investigation report ("PSR") recommending an offense level of 10, which yielded a sentencing range of 6 to 12 months of imprisonment. The PSR did not recommend any departures, and neither side objected to the PSR's contents.

At Moreno's sentencing hearing, the district court notified the parties that, despite the PSR recommendation, it was considering sentencing Moreno above the guideline range. After allowing an opportunity for briefing, the court reconvened the sentencing hearing and departed upward from offense level 10 to level 13, which resulted in Moreno receiving an 18 month term of incarceration. The district court premised the departure on the effect that Moreno's decision to flee had on the operation of the judicial system.[2]

## II.

Moreno challenges the upward departure because, in his view, the departure rationale offered by the district court does not remove this case from the "heartland" established by U.S.S.G.

---

[2] The district court also stated that it was unfair that Moreno's sentence for bail jumping would be substantially less than the statutory maximum he would have faced for the underlying civil rights offenses. On appeal, the government has conceded that this additional ground is not a valid basis for departure.

§ 2J1.6. We review Moreno's challenge under the recently enacted Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"). See 18 U.S.C. § 3742(e); United States v. Thurston, 358 F.3d 51, 71-72 (1st Cir. 2004); United States v. Frazier, 340 F.3d 5, 14 (1st Cir. 2003) (holding that the PROTECT Act applies to appellate review of upward departures).

In reviewing a departure under the PROTECT Act, we first determine de novo whether the basis for departing is either inconsistent with the objectives of federal sentencing as articulated in 18 U.S.C. § 3553(a)(2) or not authorized by 18 U.S.C. § 3553(b). See 18 U.S.C. § 3742(e)(3)(B)(i-ii); Thurston, 358 F.3d at 70. If we deem the departing rationale appropriate, we then determine de novo if the facts of the instant case justify departing from the guideline range.[3] See 18 U.S.C. § 3742(e)(3)(B)(iii); Thurston, 358 F.3d at 70.

Consistent with Thurston, we first ask whether the district court correctly identified as a departing rationale "an aggravating or mitigating circumstance of a kind or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. Because criminal sentencing "encompasses the

---

[3] Prior to the enactment of the PROTECT Act, this second question was reviewed only for clear error. See United States v. Chapman, 241 F.3d 57, 63 (1st Cir. 2001).

-4-

vast range of human conduct," the Commission did not place many limitations on the factors that a court could consider in departing from the guideline range. U.S.S.G. ch. 1 pt. A 4(b). But while the universe of possible departure factors is broad, there are boundaries. Certain factors are off limits because the Commission has determined that they never could justify a departure. See United States v. Perez, 160 F.3d 87, 89 (1st Cir. 1998) (listing forbidden departure factors). Other factors are impermissible because the Commission adequately considered them in establishing the guidelines or because they are inconsistent with the structure and theory of the guidelines. See United States v. Martin, 221 F.3d 52, 57 (1st Cir. 2000).

The district court's basis for departing upward in sentencing Moreno was the effect that Moreno's conduct had on the efficient operation of the judicial system. In articulating this rationale, the district court noted "several components" that could lead to a sufficiently large disruption to warrant a departure: (1) the nature of the proceeding at which the defendant failed to appear (trial or pretrial); (2) the nature of the underlying case against the defendant (single or multi defendant); and (3) the length of the defendant's absence.

Under the guidelines, substantially disrupting a governmental function is a favored ground for departing. See U.S.S.G. § 5K2.7; United States v. Anderson, 353 F.3d 490, 510 (6th

Cir. 2003) ("conduct that significantly disrupted . . . judicial function" is ground for upward departure under U.S.S.G. § 5K2.7). But a departure on this basis is only appropriate if the interference with "governmental function is [not] inherent in the offense." U.S.S.G. § 5K2.7; see United States v. Sarault, 975 F.2d 17, 19-20 (1st Cir. 1992).

One of the factors that the district court identified as favoring a departure is the additional burden placed on the justice system by a defendant who is absent for his trial. As the court explained, a defendant who fails to appear for only a pretrial proceeding "does not have the same impact on the judicial proceeding [as a defendant who] fail[s] to appear at the time of trial."

From our vantage point, the difficulty with this rationale, at least as an independent basis for departing, is that a defendant failing to appear for trial is a factor that was already considered by the Commission in establishing the sentencing exposure for bail jumping. The legislative history of the bail jumping statute demonstrates that Congress enacted the law with an eye toward punishing defendants who abscond with such an intent. The Senate Report states that one of the purposes of the statute is "to deter those who would obstruct law enforcement by failing knowingly to appear for trial . . . ." See S. Rep. No. 98-225, reprinted in 1984 U.S.S.C.A.N. 3182, 3213 (emphasis supplied). It

is hard to imagine that the Commission failed to consider a defendant who fails to appear for trial in developing the "heartland" for this offense. See Koon v. United States, 518 U.S. 81, 94 (1996) (stating that each guideline is intended to apply to a "heartland of typical cases"); United States v. Sarna, 28 F.3d 657, 660 (7th Cir. 1994) (stating that a factor common to many bail jumping cases cannot be a proper basis for departure).

This is not to say, however, that the defendant's failure to appear for trial will never have an atypically disruptive effect on the judicial process. The government may not try a defendant if he is not present on the date that his trial commences. See Crosby v. United States, 506 U.S. 255, 259-60 (1993) (stating that Fed. R. Crim. P. 43 prevents trial in absentia if the defendant is not present at the beginning of trial). The government's inability to proceed against an absent defendant could cause a substantial disruption in the administration of justice if the government is materially prejudiced in its ability to prosecute the underlying offense after the defendant is found: witnesses could disappear and evidence could become so stale that it would be more difficult for the government to prosecute at a later date.

Moreover, the burdens caused by a defendant failing to appear for his trial could be even more pronounced in a multi-defendant prosecution. In addition to the possible disappearance of witnesses and the loss of evidence, the defendant may obtain a

distinct advantage over the government by absconding in a multi-defendant case. If the government proceeds against the co-defendants before the defendant is found, the defendant can assess the strengths and weaknesses of the government's case before returning for his own trial. Moreover, the defendant could create additional impediments to the government's ability to prosecute the co-defendants. The co-defendants could attempt to shift the blame from themselves to the absent defendant. Further, the defendant may place additional burdens on the court because, in many cases, the court will either have to conduct multiple trials unnecessarily, cf. United States v. Flinn, 987 F.2d 1497, 1505 (10th Cir. 1993) (holding that unnecessary deployment of government resource is basis for upward departure), or wait an indeterminate length for the capture of the defendant to conduct a single trial, see United States v. Hastings, 847 F.2d 920, 923 (1st Cir. 1988) (observing that "justice delayed is justice denied").

The district court also emphasized the length of the defendant's absence. For many of the reasons just articulated, the length of the absence can be relevant to determining the extent to which the defendant's conduct disrupted the judicial process. The longer the absence, the more likely it is that the government will have difficulty prosecuting the defendant on his return. In addition by absenting himself, the defendant (if convicted) delays the day on which he will ultimately face punishment. Thus, a long

-8-

absence would permit a guilty defendant to live for a substantial period in freedom. See United States v. Cherry, 10 F.3d 1003, 1009-10 (3d Cir. 1993) (affirming imposition of upward departure where, inter alia, defendant was absent for 20 years).

In this case, Moreno absented himself for four years, and undoubtedly would have continued that state of affairs had he not been arrested in New York. Conceivably, the length of his absence had an unusually negative impact on the functioning of the judicial process, but there have been no findings to this effect. See 18 U.S.C. § 3553(c) (under PROTECT Act district court required to provide written statement of findings justifying the departure). While a 20 year absence would surely be atypical, we are not prepared to say, based on the slender record before us, that the four-year absence here is outside of the heartland. It does not seem obviously unusual that a defendant who absconds shortly after arraignment, with the intention of avoiding trial, might well remain a fugitive for a few years. We are left to speculate whether the duration of Moreno's absence had an unusual impact, (beyond that already accounted for) contributing to the disruption of the judicial process. More than speculation is required.

In sum, we conclude that one of the component factors, creating a need for multiple trials -- relied on by the district court in its disruption analysis, supports the departure ordered

in this case. Two other factors mentioned by the court should not have been relied on, except insofar as they support the multiple trial analysis: that a defendant might miss trial rather than a pre-trial hearing has been adequately considered by the Commission, and the record before us does not sufficiently explain how Moreno's four-year absence takes this case outside of the heartland. As we are unsure what sentence the district court would have imposed had it the benefit of our opinion, we **vacate** the sentence and **remand** to allow the court to reimpose sentence, certain that the court will act promptly. See Williams v. United States, 503 U.S. 193, 203 (1992). The district court may, of course, reaffirm its prior sentence or impose another lawful sentence.

**So ordered**.